CRESCILLA B. VROOMAN, Appellant, v. HUGH McCABE et al.,
Appellees.

**EXECUTORS AND ADMINISTRATORS: Laches in Enforcing Bequests
and Claims.** One may not, on due notice, allow, without objection,
an order to be entered (1) discharging an executor, and (2) recit-
ing that the estate has been fully settled and all claims paid, and,
almost 20 years thereafter, enforce bequests and allow claims in
his favor against the lands left by the deceased, when such lands
have passed into the hands of good-faith purchasers for full value,
and without notice that such claims have not been paid. This is
true even though the bequest was, originally, a charge on the lands,
and even though the conveyances antedated the order discharging
the executor and reciting the payment of all claims.

*Appeal from Allamakee District Court.*—H. E. TAYLOR, Judge.

NOVEMBER 26, 1920.

ACTION in equity, in which plaintiff asks that her claim in
the sum of $1,800 be established as of the date in 1901 when it
was allowed as a claim against her father's estate; that the
probate record in said estate be corrected; that 40 acres of land
heretofore conveyed to defendants be sold to satisfy plaintiff's
said claim; that plaintiff have personal judgment against certain
of the defendants for that amount; that a legacy of $200 left her
in her father's will be paid, and the real estate sold for that
purpose, and for personal judgment against defendants there-
for; that the interests of all defendants except McCormick be
decreed to be inferior to plaintiff's claim; that the interests of
the McCormicks be determined; and for general equitable relief.
The McCormicks are dead, and nothing is asked in their behalf.
After a full trial, plaintiff's petition was dismissed for want of
equity, and judgment was rendered against her for costs. Plain-
tiff appeals.—*Affirmed.*

*Stillwell & Stillwell* and *Carl H. Lambach,* for appellant.

*W. S. Hart* and *D. J. Murphy*, for appellees.

Preston, J.—George M. Beall died testate, January 25, 1899. In his will he made several bequests to his children, among which was a bequest of $200 to plaintiff. After making provisions for the support and maintenance of his widow during her lifetime, the will contained the following residuary clause:

"Subject to the payment of my debts, the support and maintenance of my said wife, as aforesaid, and also subject to the full payment of all the foregoing bequests as hereinbefore provided, I will and bequeath all of my property, both real and personal, of every kind and nature, of which I may die seized and possessed, to my son, Jacob N. Beall, he to become the absolute owner thereof."

The will was filed early in February, but before it was probated, Jacob N. Beall, by quitclaim deed, sold and quitclaimed to Thomas J. Holahan, all his interest in and claim to the 40 acres of land in controversy (describing it), for $700. The deed recites that the interest conveyed is that acquired by grantor by will of his father, and that the will was filed for probate, February 7, 1899. The date of the deed is March 18, 1899, and it was duly recorded, March 30, 1899. Shortly thereafter, the will was admitted to probate. In May, 1899, Holahan conveyed the 40 acres to Hugh McCabe by warranty deed, for the consideration of $2,400, which deed was duly recorded, June 1, 1899. This was necessarily subject to the occupancy by the widow, but the deed does not so state. The value of the 40 acres at the time of the conveyance just mentioned was $50 to $60 an acre. Hugh McCabe died, after being made a party to this suit. The widow and heirs have conveyed the 40 acres to Thomas H. McCabe. After the death of the widow, in 1916, Thomas McCabe took possession of the 40 acres, and has since remained in possession thereof. Plaintiff does not allege any fraud in any of these transfers, nor is it shown or claimed that the grantees in the deeds had any notice or knowledge that plaintiff's claims had not been paid, or of the mistake in the record upon the allowance of plaintiff's claim, or that the record, showing all claims paid, was not correct. Deceased, George M., died seized of said 40

acres, which constituted his homestead. He also owned 10 additional acres in said county, which was sold in 1899, to pay claims against the estate. The widow, Ann Beall, elected to take her homestead right, and not under the will. The will nominated Jacob N. Beall as executor, but he declined to serve, and the widow, Ann, was appointed, and letters of administration were issued, April 15, 1899. Some claims were filed against the estate, among them the claim of plaintiff for $1,842 for services to her father for several years, at $3 per week. The McCormicks objected to the allowance of plaintiff's claim; but, under some arrangement by which the claim of the McCormicks was to be paid first, the objections to plaintiff's claim were withdrawn, and the claim allowed. It was allowed on April 16, 1901, nearly two years after it was filed. Appellees claim that, from the judge's calendar, the claim appears to have been allowed for $18, while appellant contends that it shows $1,800. We are satisfied that it was the intention and purpose of the court to allow the claim for the last-named amount; but the record, as made by the clerk from the judge's calendar, shows the claim allowed in the sum of $18. This entry was made on April 16, 1901. On November 10, 1902, the administratrix was duly discharged, and the record recites:

"It appearing to the court that due and legal service of the filing of the petition for discharge having been made on all parties interested in said estate; that said estate was fully settled, all claims against the same paid; wherefore, it was ordered and adjudged by the court that the said report be, and is hereby approved, and the administratrix Ann Beall, be fully discharged," etc.

The probate record or index shows that five notices of the final report were served on April 3, 1902. Plaintiff, as a witness, does not say she did not have notice of the final report. She says she lived with her mother on this land for about two years after her father died. Her testimony is brief, and relates almost entirely to the allowance of her claim in the sum of $1,800. The files in the settlement of the estate are lost, so that it is not shown what was contained in the final report, or what the objections thereto were, although some were filed. The clerk testifies that they do not make a complete record in probate proceedings,

as is done in some counties. The widow occupied the 40 acres in dispute under her homestead claim until her death, about March 15, 1916. Plaintiff alleges that the clerk was negligent in making the record in regard to her claim, and that she did not discover the mistake until about June, 1916, after her mother's death. Neither plaintiff's claim nor her legacy has been paid. This action was brought in October, 1917. Defendants, other than Jacob N. Beall, answering separately, claim that Hugh McCabe paid full market value to Holahan, and that said Hugh and his heirs have always claimed said land openly, subject only to the use thereof by Ann Beall, the widow; that plaintiff's claim was fraudulent, and that the allowance thereof was by collusion between plaintiff and her mother, acting as administratrix; that, in any event, the claim is not a lien on the real estate in question; that plaintiff's claims are barred by the statute of limitations; that plaintiff is guilty of laches and negligence in not proceeding within a reasonable time, and that she is now in no position to enforce her demands against the real estate; that the land in question was the homestead of George M. Beall, deceased, and his wife, Ann; and that it passed, after the death of said Ann, to Jacob N. Beall and his grantees, free of liens and claims. Defendant Jacob N. Beall, on behalf of himself, and for the protection of all parties claiming under him, says that the final report of the administratrix was filed in 1901, and that personal notice thereof was had upon all interested parties, including this plaintiff, which report was approved in 1902, and the estate adjudged to be fully and finally settled, and that said adjudication is binding upon the plaintiff; and relies upon the same matters raised by the other defendants.

Appellant's points are that she is entitled to have the probate record corrected, showing the true allowance of her claim; that she is entitled to a decree enforcing her claim and legacy against the real estate now in the hands of Thomas McCabe; that she is entitled to a personal judgment against him and the other defendants. As to the first point, appellees contend that plaintiff made no showing entitling her to equitable relief, and that she was guilty of laches, in making the application to correct the record, and that her application to correct the record is barred by the statute of limitations. We are inclined to think

this is true, but do not determine it, nor shall we take the time to discuss these propositions, since no useful purpose could be served in correcting the record, unless plaintiff is entitled to the relief she asks against the defendants or the property in controversy. There is no other property out of which she could make her claim.

1. Appellants seem to rest their case on the proposition that the will makes the debts and legacies a charge or lien upon the land, and that the acceptance of the devise, by taking possession, fixes a liability to pay the charge upon the land, and that such liability is a personal one, and implies a promise to pay. A large number of cases are cited, in some of which, at least, the language of the will devised specific property, and made a charge upon it.

Appellees say there is no lien in the instant case, because it mentioned no property specifically, and they refer to appellant's citation, 40 Cyc. 2028 and 2029. They do not question the abstract proposition of law there stated, but say it is not applicable here, for the reason, as said, that there is no specific devise, and no charge or specific lien is imposed on any of the property of the deceased. For the purposes of the case, we may concede, without deciding, that, in the first instance, the will created a charge upon the land in question. Appellants argue that the will is the basis of the present owner's title, and that the recording of the will gives notice of its provisions. If all appellant's said propositions are true, how long does the lien or charge continue? Appellant says, until the remainderman comes into possession. We assume that they mean it would extend that long unless paid or discharged. It needs no argument, of course, to show that there could be no lien or charge if all legacies and claims against the estate had been fully paid. If it be true that defendants must take notice of the provisions of the will, it is equally true, we think, that they had a right to rely on the record made in the matter of the estate, wherein it was stated that the administratrix was discharged, and that the estate had been fully settled, and all claims paid. Presumably, plaintiff had notice of the final report. She must have known that her claim, even in the sum of $18, which she supposed was allowed

in the sum of $1,800, had not been paid. No application was made by her to require the administratrix to sell the land which she now claims was charged with the payment of her claims. She could have filed objections to the final report. There is no claim that she did so. Or she could have, within the proper time, made an application in probate to set aside the order, or perhaps brought a suit on the bond of the administratrix, if there had been a failure to perform the duties thereof. It now appears that, in fact, there were other third-class claims allowed, which were not paid in full. The amounts are not large, but the claimants are not made parties to this suit.

The McCabes paid full value for the land, without notice of the claims which are now, after nearly 20 years, advanced by plaintiff. Under the record, and under all the circumstances of this case, we are of opinion that, as to the defendants, the plaintiff's claims should be considered paid and discharged. This being so, there was no charge or lien upon the land at the time this action was brought. To hold otherwise would, it seems to us, be unconscionable and inequitable.

Other questions are argued by appellees, some of which are that all the issues presented by plaintiff are barred by the statute of limitations; that plaintiff has been guilty of laches; and that plaintiff should have proceeded in probate against the estate; and so on. They contend, too, that our statutes do not provide for actions by creditors against the property of deceased (citing *Hansen's Empire Fur Factory v. Teabout,* 104 Iowa 360), and that the statutes do not create any specific lien upon the real estate of a deceased debtor for the payment of established claims (citing *Iowa L. & T. Co. v. Holderbaum,* 86 Iowa 1).

We deem it unnecessary to discuss these questions. We are of opinion that the decree appealed from is right, and it is— *Affirmed.*

WEAVER, C. J., EVANS and SALINGER, JJ., concur.